In Re Complaint of INTEROCEAN  SHIPS, INC.,
Owner and Operator of the M/V OCEAN PEARL

High Court of American Samoa
Appellate  Division

AP No. 032-84

November 11, 1985

Before  MURPHY,  Associate  Justice,  HEEN* and MARQUEZ,** Acting
Associate Justices.

Counsel:   For the Appellant, William Reardon
           For the Appellee, Roy J.D. Hall, Jr.

     Although  this  matter  is  characterized  by  appellant
Interocean Ships,  Inc.  (Interocean), as an appeal from the July
27, 1984 order  of  the  Trial  Division  dismissing Interocean's
complaint  seeking  to  limit  its liability in an action brought
against it and its vessel M/V  Ocean  Pearl  (Ocean  Pearl), and
others,  it  really  seeks  issuance  from  this  court  of  an
extraordinary writ directing the Trial Division to "reinstate its
complaint."  We grant Interocean's petition for the writ but hold
that the Trial Division has no authority to  issue the injunction
asked for by Interocean.

     This case  has its  genesis on  or about  November 22, 1983,

when an explosion occurred on board the Ocean Pearl in which a seaman employed thereon, Afamiliona Fa'atasiga (Fa'atasiga), was injured. On December 28, 1983, Fa'atasiga filed an in rem admiralty action in the Trial Division to recover damages for his injuries. The Ocean Pearl was arrested pursuant to Fa'atasiga's complaint and, thereafter, was released upon the posting of a sufficient bond. The parties hereto agree that other actions have been filed arising out of the same explosion, in United States District Courts in the District of Hawaii and the Southern District of California.

On or about May 23, 1984, Interocean filed its complaint, alleging that the claim arising from the explosion exceed its interest in the Ocean Pearl. Appellant sought to limit its liability to its interest in the vessel and to have an injunction issued to halt all actions in other United States jurisdictions and to have them proceed in the High Court pursuant to 46 U.S.C. secs. 183 and 185. Fa'atasiga intervened and the Trial Division ordered the dismissal after a hearing.

In ordering the dismissal, the very learned judge of the Trial Division stated:

> 46 U.S.C. 185 allows a vessel owner to petition
> a District Court of the United States of
> competent jurisdiction. The High Court of American
> Samoa is not a District Court of the United States.
> This Court has no jurisdiction over this matter.
> Matter dismissed.

In the Appellate Division, Interocean argues that it does not seek relief under 46 U.S.C. section 185[1] but under the

---

1. 46 U.S.C. sec. 185 provides:

> Petition for limitation of liability; deposit of value of interest in court; transfer of interest to trustee.

> The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter, as amended, and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 4283, as amended [46 U.S.C. sec. 183], or (b) at his option shall transfer, for the benefit of

77

admiralty jurisdiction of the High Court of American Samoa. American Samoa Code Annotated (A.S.C.A.) sec. 3.0208(a)(3).[2] Interocean contends that 46 U.S.C. section 183[3] substantively

claimants, to a trustee to be appointed by the court his interest in the vessel and freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 4283, as amended [46 U.S.C. sec. 183]. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease.

2. A.S.C.A. sec. 3.0208(a)(3) provides:

Jurisdiction of divisions.

(a) The trial division of the High Court shall be a court of general jurisdiction with the power to hear any matter not otherwise provided for by statute. Notwithstanding the foregoing, the trial division of the High Court shall have original jurisdiction of the following classes of cases and controversies:
   *         *         *
(3) admiralty and maritime matters, of which the trial division shall have both in rem and in personam jurisdiction[.]

3. 46 U.S.C. sec. provides:

Amount of liability; loss of life or bodily injury; privity imputed to owner; "seagoing vessel"

(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

(b) In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $60 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $60 per ton, to be available only for the

limits its liability with regard to claims against the Ocean Pearl to its interest in the vessel, and that, under Rule F(3), American Samoa Trial Court Rules, Supplemental Rules of certain Admiralty and Maritime Claims (Rule F(3), the Trial Division is empowered to issue an injunction to the same effect as in 46 U.S.C. section 185. We disagree.

We start with the proposition that the courts of American Samoa are not United States District Courts. The power implied in 46 U.S.C. section 185, <u>Petition of Liverpool, Brazil & River Plate Steam Navigation Co.</u>, 57 F. 2d 176 (2nd Cir. 1932), to enjoin "all other claims and proceedings," simply does not exist

_____

payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.

(c) For the purposes of this section the tonnage of a seagoing steam or motor vessel shall be her gross tonnage without deduction on account of engine room, and the tonnage of a seagoing sailing vessel shall be her registered tonnage: Provided, That there shall not be included in such tonnage and space occupied by seamen or apprentices and appropriated to their use.

(d) The owner of any such seagoing vessel shall be liable in respect of loss of life or bodily injury arising on distinct occasions to the same extent as if no other loss of life or bodily injury had arisen.

(e) In respect of loss of life or bodily injury the privity or knowledge of the master of a seagoing vessel or of the superintendent or managing agent of the owner thereof, at or prior to the commencement of each voyage, shall be deemed conclusively the privity or knowledge of the owner of such vessel.

(f) As used in subsections (b), (c), and (e) of this section and in section 4283A [46 U.S.C. sec. 183b], the term "seagoing vessel" shall not include pleasure yachts, tugs, towboats, towing vessels, tank vessels, fishing vessels or their tenders, self-propelled lighters, nondescript self-propelled vessels, canal boats, scows, car floats, barges, lighters, or nondescript non-self-propelled vessels, even though the same may be seagoing vessels within the meaning of such term as used in section 4289 of this chapter, as amended [46 U.S.C. sec. 188].

in this court and is not argued for by Interocean.[4]

In Norwich & New York Transportation Co. v. Wright, 80 U.S. 585 (1972), the Supreme Court stated that even prior to enactment of the Shipowner's Limited Liability Acts, now 46 U.S.C. section 181 et seq., it was the law of admiralty that a shipowner was liable only to the extent of his interest in the ship and the freight, and the first Limited Liability Act was drawn with direct reference to those previous principles and laws. See also 70 Am. Jur. 2d Shipping sec. 314 (1973).

Subsequent to Norwich, Congress amended 46 U.S.C. section 185 so as to provide that a shipowner may petition a "district court of the United States of competent jurisdiction" for limitation of his liability in accordance with the act. The law provides the procedure for effecting the limitation by halting claims in courts of other jurisdictions.

We hold that when the Fono enacted A.S.C.A. section 3.0208(a)(3) conferring admiralty jurisdiction on this court, it included within that jurisdiction the substantive principle of admiralty law limiting a shipowner's liability to its interest in the vessel and its freight. However, neither A.S.C.A. section 30208(a) (3) nor procedural rules can confer jurisdiction to effect such limitation by injunction to the full extent given to a United States District Court by 46 U.S.C. section 185. Only Congress can do that, either through an Organic Act for American Samoa, or through other legislation clearly giving this court the power of specific matters. The Fono cannot extend the jurisdiction of this court to encompass proceedings in other jurisdictions. Neither can this court accomplish that result through its procedural rules.

This situation here is analogous to that presented in Bigelow v. Nickerson, 70 F. 113 (7th Cir. 1895), where the court held that a Wisconsin statute which required that an action for damages, caused by a death occurring on Lake Michigan but within Wisconsin's borders, could only be brought in a state court was void. The statute was determined to be a limitation on the enforcement of a private cause of action that excluded the jurisdiction of the federal courts.

In the instant case, if we were to direct the Trial Division to issue the injunction we would, in effect, be depriving a claimant not within this jurisdiction but within the jurisdiction of a United States District Court of his right to seek relief in that court. Moreover, we would be excluding a competent United

---

[4]. For such an argument to be sustained, one would have to read into 46 U.S.C. section 185 an intent by Congress to include this court within the term United States District Court. Interocean has not directed us to anything indicating such intent and we have found nothing.

States District Court from its jurisdiction to hear that claim.

> We think it not competent for a state to do so
> restrict a general right that one entitled to invoke
> the jurisdiction of a federal court in the prosecution
> or defense of a suit may not assert the right so
> granted in a federal court, or that the state may in
> any way restrict the exercise of the jurisdiction of a
> federal court[.]

Bigelow v. Nickerson, supra, at 120.

If the state of Wisconsin could not restrict such a claim or jurisdiction by statute, certainly this court cannot do so by statute or procedural rule.

We do not find In Re Bowoon Sangsa, 720 F. 2d 595 (9th Cir. 1983), cited by Interocean, to be precedent for the injunctive action requested from the Trial Division. The case simply does not stand for the principle argued for by Interocean.

Neither do we believe it a proper exercise of judicial discretion to mandate the issuance of an injunction of highly doubtful legitimacy and enforceability on the ground that other courts might recognize it and observe its terms on the basis of comity. Comity is too tenuous a thread upon which to hang this court's action. Moreover, Interocean could find itself in a more chaotic situation if only some courts, but not others, chose to grant comity to the mandate of this court. Thus, Interocean's argument that the jurisdiction would make for judicial economy simply does not hold water.

We grant Interocean's request that we mandate the Trial Division to take jurisdiction of the petition and limit Interocean's liability in this matter to its interest in the M/V Ocean Pearl and its freight. In all other respects, the petition is denied.

MURPHY, Acting Chief Justice, concurring.

At the outset I note that both the Trial and Appellate Division are quite correct in pointing out that the High Court of American Samoa is not a United States District Court. The vessel Pacific Princess v. Trial Division, 2 A.S.R. 2d 21 (1984). It is a territorial court duly constituted under Articles 1V of the United States Constitution. This fact has cause problems for the Territory and the Court. As Chief Justice Gardner pointed out in his concurring opinion in Pacific Princess, "To me the lack of access by the residents of this territory to a court with federal jurisdiction is troublesome. I think this is the only territory of the United States which is not within the jurisdiction of a United States District Court." Id. at 24. American Samoa has a United States Post Office, F.D.I.C. insured banks, a Social security Office, F.A.A. installations and numerous other federal

81

contacts. When legal problems arise concerning these enterprises the appropriate forum would usually be a United States district court.

Some federal legislation affecting American Samoa specifically provides for enforcement by the High Court. The Wholesome Poultry Products Act (21 U.S.C. secs. 451 et seq.) and the Wholesome Meat Act (21 U.S.C. secs. 601 et seq.), for example, provide that "The United States district courts, the District Court of Guam, the District Court of the Virgin Islands, the highest court of American Samoa, and the United States courts of the other Territories, are vested with jurisdiction specifically to enforce, and to prevent and restrain violating of, this Act." 21 U.S.C. secs. 467(c), 674. A few Acts allow enforcement of claims arising in American Samoa in a particular district court. The Federal Water Pollution Control Act (33 U.S.C. secs. 1251 et seq.) and the Marine Protection, Research, and Sanctuaries Act (33 U.S.C. secs. 1401 et seq.) provide that "in the case of American Samoa and the Trust Territory of the Pacific Islands [actions may be brought in] the District Court of the United Sates for the District of Hawaii." 33 U.S.C. secs. 1321(n), 1322(m), 1402(g).

The most common approach, however, is that typified by the Right to Financial Privacy Act (12 U.S.C. secs. 3401 et seq.) which defines financial institution as a particular type of business "located in any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands." 12 U.S.C. secs. 3401(1). The Act goes on to provide that certain remedies are to be pursued "in the appropriate United States district court." 12 U.S.C. secs. 3410(a). The Surface Mining Control and Reclamation Act (30 U.S.C. secs. 1201 et seq.), as another example, defines state as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, and Guam," (30 U.S.C. sec. 1291(24) and further provides that an action by the Secretary of the Interior approving or disapproving a state surface mining program "shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is a issue." 30 U.S.C. sec. 1276(a). Clearly in such cases it was the intent of Congress to make available a federal court in which to adjudicate all disputes which arise under the Act. Only in American Samoa is this not possible.

One is strongly tempted to believe that the lack of access to such a court is the result of Congressional oversight and inattention rather than a deliberate attempt to exclude American Samoa.

American Samoa came under the jurisdiction of the United States through treaties of cession executed on April 10, 1900 and July 16, 1904. The treaties were not ratified by Congress until 1929. 48 U.S.C. secs. 1661, 1662. In that Act, Congress

delegated to the President all civil and judicial power necessary to administer the territory. In 1951 administration was transferred by the President from the Secretary of the Navy to the Secretary of the Interior. Congress has never passed an organic act but the Department of Interior did approve the adoption of a constitution in 1960 that provides for executive, legislative and judicial branches. In 1977 a provision for an elected Governor and Lieutenant Governor was promulgated by the Department of the Interior. Finally, in 1983 Congress enacted legislation providing that amendments to the American Samoa Constitution can be made only by Act of Congress. 48 U.S.C. sec. 1662(a).

The High Court has stated that "Congress nevertheless retains all legal authority over the people of this territory and all departments of its government, and may legislate directly for the territory, abrogate its laws, void a valid act, or validate a void act." Simoa v. American Samoa Government, 2 A.S.R. 2d 9, 10 (1984), citing Inter-Island Steam Navigation Co. v. Territory of Hawaii, 305 U.S. 306 (1938). This legal authority extends to the High Court.

This does not, however, mean that the High Court can act only where specifically empowered to do so by Congress. In 1975 the Fono (Legislature of American Samoa) passed a bill conferring in rem and in personam admiralty jurisdiction on the High Court. A.S.C.A. sec. 3.0208(a)(3). This was held to be a proper grant of admiralty jurisdiction in Meaamaile v. American Samoa, 550 F. Supp. 1227 (D.Haw. 1982). In that case a Samoan sailor injured aboard a Western Samoa vessel under charter to the government of American Samoa brought an action in the United States District Court for the District of Hawaii. Judge King, in dismissing the action, referred the plaintiff to the High Court. He held that it is not necessary for admiralty jurisdiction to be directly and specifically conferred upon territorial courts by Congress. "Rather, Congress may properly delegate plenary authority, including judicial authority, to govern a territory to the Executive. That is exactly what Congress has done in the case of American Samoa. Pursuant to its grant of plenary judicial power over American Samoa, the Executive has properly conferred in rem admiralty competence upon the High Court by approving the act of the American Samoa legislature set forth above." Id. at 1237-1238.

So the High Court can exercise at least some authority not specifically granted it by Congress. To carry out its admiralty jurisdiction to the High Court adopted admiralty rules, including rules for the conduct of this type of limitation action. American Samoa Trial Court Rules, Supplemental Rules for Certain Admiralty and Maritime Claims, Rule (3). The question faced by the court in this case is whether the High Court's admiralty jurisdiction properly extends to the limitation of liability and the issuance of an injunction to protect the validity of such a limitation, if proper.

I agree with the reasoning of the majority opinion regarding the power of this court to limit a shipowner's liability as part of its inherent authority as an admiralty court. The question of the power of the High Court to enjoin proceedings in other jurisdictions is more troubling. A limitation action without injunctive relief is a right without a remedy.

Chief Justice Gardner faced a similar problem in a Trial Division case, Security Pacific Bank v. M/V Conquest, 2 A.S.R. 2d 40 (1985). In that case the plaintiff brought an action under 46 U.S.C. section 951 to foreclose a preferred ship mortgage. That section of the Act provides "original jurisdiction of all such suits is granted to the district courts of the United States exclusively." Justice Gardner held that the purpose of that phrase was to ensure that no state court would attempt to exercise jurisdiction over a ship mortgage. Lacking a United States District Court to exercise its "exclusively, original" jurisdiction a mortgage can be foreclosed in any court exercising valid admiralty jurisdiction, the court held.

The Chief Justice distinguished his holding in Conquest from the case before us as follows: "Proceedings under [46 U.S.C. 195 are] far beyond the jurisdiction of this court since they involve the injunction of proceedings in United States district courts or state courts and the marshalling of claims of creditors." id. at 42-43.

Chief Justice Gardner also looked to the purpose of the Ship Mortgage Act in deciding that the High Court could exercise the jurisdiction granted "exclusively" to the United States district courts. He found that the Act's intent to stimulate private investment in the shipping industry would be thwarted if security interests in financed ship could be avoided simply by taking a ship beyond the jurisdiction of any district court. id. at 41.

It has been held that the purpose of 46 U.S.C. section 185 is to permit all actions to be consolidated in one action which will dispose of all claims against a vessel owner. Complaint of Caldas, 350 F. Supp. 566 (D.Penn. 1972). Proceedings under section 185 have also been said to be designed to marshal all claims against a vessel and owner. Petition of Canada S.S. Lines, Ltd., 93 F. Supp. 549 (D. Ohio 1950). Certainly these purposes are not promoted by denying the High Court the power to enjoin proceedings in other forums.

"The bottom line" as economists and accountants are fond of saying is as follows: owners of vessels entering Pago Pago harbor have fewer substantive rights than in any other American harbor, and perhaps fewer rights than afforded by Commonwealths having free association compacts with the United States.

The Government of American Samoa and much of the local business community seem to feel, rightly or not, that the fishing

industry is the mainstay of the Territory's economy. Judge Gardner's concern about the economic consequences to the shipping industry set forth in Conquest as to mortgage foreclosures applies also to limitation actions.

My closing observation as to the majority opinion is lifted from another Gardner classic, "correct it may be, right it is not." Crammer v. Shay, 94 Cal. App. 3d 242, 156 Cal. Rptr. 303 (1979), at 307.

_____

*Honorable Walter M. Heen, Associate Justice, Intermediate Court of Appeals, State of Hawaii, sitting pro tem by order of Chief Justice Gardner.
**Honorable Alfredo C. Marquez, United States District Judge, District of Arizona, sitting pro tem by order of Chief Justice Gardner.